IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAROL A. FLEMING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-cv-0030-MJR-CJP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM and ORDER

REAGAN, District Judge:

**A. Introduction**

In late January 2010, Carol Fleming (represented by counsel) filed suit in this Court under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1] Defendant, Commissioner Astrue, timely answered and submitted the transcript and administrative record on April 2, 2010. Following several extensions, the issues were briefed as of August 19, 2010. For the reasons described below, the Court rejects Fleming's arguments and affirms the Commissioner's decision.

---

[1] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all purposes relevant to this case, the DIB and SSI statutes are identical. Additionally, 20 C.F.R. § 416.925, detailing medical considerations relevant to SSI claims, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Thus, Fleming's DIB and SSI claims are considered simultaneously herein, and most citations are to DIB regulations for convenience.

B. **Summary of Procedural History**

Fleming filed an application for benefits on November 8, 2005, alleging disability beginning on June 16, 2005 (Transcript, "Tr.," 78, 705). The application was denied initially and denied on reconsideration. After holding a hearing, Administrative Law Judge ("ALJ") Zane A. Lang denied the application for benefits in a decision dated September 24, 2008 (Tr. 16-21). Fleming's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision (Tr. 3). Fleming exhausted her administrative remedies and filed a timely complaint in this Court.

C. **Nature of Plaintiff's Claim**

Fleming contends that the ALJ clearly erred in failing to award her *any* period of disability between June 15, 2005 and August 14, 2008. Fleming asserts that she is entitled to at least a closed period of disability, because she underwent a series of surgeries beginning with hand surgery in April 2005. Without citing to any particular evidence regarding her functional capacity, Fleming argues that she was "clearly disabled" from July 5, 2005 through early 2008 (Plaintiff's Brief; Doc. 21, p. 5).

D. **Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental

impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. **20 C.F.R. § 404.1572.**

The Social Security regulations recognize that as people age, they limit their capacity to adjust to new employment. **20 C.F.R. § 404.1563(a).** A "younger person" is defined as an individual between the ages of 18 through 49. The regulations presume that – as to claimants under 50 years old -- age will not seriously affect the ability to adjust to other work. **20 C.F.R. § 404.1563(c).** Ms. Fleming is a younger individual; she was 39 years old at the time of the hearing (Tr. 78).

The Social Security regulations delineate a sequential five-step inquiry to ascertain whether a claimant is disabled. Under this approach, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education, and work experience. ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also 20 C.F.R. §§ 404.1520(b-f).** *Accord Simila v. Astrue*, **573 F.3d 503, 512-13 (7th Cir. 2009)(The ALJ must evaluate a claim for disability "under the mandatory five-step sequential analysis" of 20 C.F.R. §§ 404.1520(a)(4) (DIB) and 416.920(a)(4) (SSI)).** A negative answer at any point in the five-step analytical process except step three halts the inquiry and leads

to a determination that the claimant is *not* disabled. **Garfield v. Schweiker, 732 F.2d 605, 607 n.2 (7th Cir. 1984),** *citing* **20 C.F.R. § 404.1520**.

If a claimant has satisfied steps one and two, he will *automatically* be found disabled if he suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment (step three) but he cannot perform his past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. **Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984).** *See also Schmidt v. Astrue*, **496 F.3d 833, 841 (7th Cir. 2007),** *quoting Young v. Barnhart*, **362 F.3d 995, 1000 (7th Cir. 2004)("If the claimant makes it past step four, the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy").**

This Court reviews the Commissioner's denial of benefits to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." **42 U.S.C. § 405(g)**. Thus, the undersigned District Judge must determine not whether Plaintiff is, in fact, disabled, but instead whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996),** *citing Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995))**.

"Substantial evidence" has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richard v. Perales, 402 U.S. 389, 401 (1971).** *See also Ketelboeter v. Astrue*, **550 F.3d 620, 624 (7th Cir. 2008)(substantial evidence means evidence "sufficient for a reasonable person to accept as adequate to support**

4

the decision").

In reviewing for substantial evidence, the entire administrative record is considered, but this Court may <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Skinner v.* Astrue, 478 F.3d 836, 841 (7th Cir. 2007);  *Ketelboeter*, 550 F.3d at 624**. As to the ALJ's evaluation, several points merit mention. First, the ALJ may not disregard evidence when there is no contradictory evidence. ***Sample v. Shalala*, 999 F.2d 1138, 1143 (7th Cir. 1993)**. Second, the ALJ may not "play doctor" and interpret medical evidence or substitute his personal observations for the considered judgments of medical professionals. ***Liskowitz v.* Astrue, 559 F.3d 735, 741 (7th Cir. 2009); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).** Third, as the United States Court of Appeals for the Seventh Circuit explained three months ago: "The ALJ need not specifically address every piece of evidence, but [he] must provide a 'logical bridge' between the evidence and his conclusions." ***O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. Nov. 29, 2010). *See also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).**

### E. <u>The ALJ's Decision</u>

In the instant case, review of the record discloses that the ALJ properly followed the five-step analysis. He found that Ms. Fleming was not gainfully employed (step one) and that she had severe impairments of obesity, status post right hand injury, recurrent abdominal wall abscesses, and status post hernia repair (step two). The ALJ next found that her impairments did not meet or equal any listed impairment (step three) (Tr. 17). Fleming does not challenge these findings. Fleming challenges the ALJ's residual functional capacity (RFC) determination, to which the Court

now turns.

At the fourth and fifth steps, the ALJ must evaluate the claimant's RFC – an "assessment of what work-related activities the claimant can perform despite her limitations." **Young, 362 F.3d at 1000**, *citing Dixon v. Massanari*, **270 F.3d 1171, 1178 (7th Cir. 2001), and 20 C.F.R. § 404.1545(a)(1)("Your residual functional capacity is the most you can still do despite your limitations.").**

Stated another way: "If an ALJ is unable to make a disability determination in the first three steps, then the process proceeds to an assessment of the applicant's residual functional capacity (RFC)…. At the fourth step, the ALJ determines whether the RFC prevents the applicant from performing his or her past relevant work… If not, in the fifth and final step, the ALJ uses the assessment of RFC to determine if the applicant can make an adjustment to other work based on the applicant's age, education, and work experience." **Arnold v. Barnhart, 473 F.3d 816, 821 (7th Cir. 2007).**

Fleming's RFC was evaluated as follows: able to occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds; stand and walk 2 hours each out of an 8 hour workday; sit for a total of 4 hours out of an 8 hour workday; no use of foot controls; only occasional bending and overhead reaching; no squatting, crawling, or climbing; no exposure to hazards; and avoid concentrated exposure to fumes, odors, dust, gases, and other environmental irritants. In determining Fleming's RFC, the ALJ referred to the evaluation that was performed by state agency physicians, but the ALJ's determination of RFC was more restrictive than that of the state agency physician (Tr. 18-20). This RFC corresponds to the ability to perform a limited range

6

of sedentary work. **20 C.F.R. § 404.1567(a).**

At step four, the ALJ found that Fleming was unable to perform her past relevant work (Tr. 20). The ALJ then moved to step five, having correctly noting that the burden shifted to the Commissioner to show that there are jobs existing in the economy which could be performed by Fleming. *See Arnold*, 473 F.3d at 821 ("**In the last step, the burden is on the Commissioner to demonstrate that the applicant is capable of performing other work 'in the national economy.'**"); *Young,* 362 F.3d at 1000 (at step five, "**the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy**").

Here, the ALJ utilized the testimony of a vocational expert, Gregory Jones. The function of a vocational expert or "VE" in a social security disability hearing "is to determine which jobs the applicant for disability benefits can do and how many such jobs exist" in the national economy. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004), *citing* 20 C.F.R. §§ 404.1566(b), (e); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). *See also Liskowitz*, 559 F.3d at 742-43 (**the Commissioner typically uses a VE "to assess whether there are a significant number of jobs in the national economy that the claimant can do"**).

In Fleming's hearing, in response to a hypothetical question which mirrored the RFC findings set forth above, VE Jones testified that the hypothetical individual could perform the functions of telephone information clerk and addressing clerk, both of which exist in significant numbers in the national economy (Tr. 735-736). The ALJ found that Fleming could perform these jobs, leading to the conclusion that Fleming was *not* disabled (Tr. 20-21).

F. **The Evidentiary Record**

The Court has reviewed and considered the voluminous evidentiary record in reaching its decision. Given the issue raised by Fleming, only a brief summary of that record is needed here.

Ms. Fleming was 39 years old at the time of the hearing. She had last worked in June of 2005. She had previous employment as a licensed practical nurse, a waitress, and a clerk in a convenience store (Tr. 725). She does not allege a mental impairment (Tr. 730).

The medical records indicate that Ms. Fleming's right ovary was removed July 5, 2005 by Dr. David Bishop. The surgical wound became infected and was drained by Dr. Bishop on July 12, 2005. Thereafter, Fleming came under the care of Dr. David Clutts, who performed an exploration and debridement of the wound on July 22, 2005 (Tr. 306). By September 2005, Dr. Clutts determined that an incisional hernia had developed at the site (Tr. 308). Dr. Clutts performed a surgical repair with placement of mesh on November 15, 2005 (Tr. 415). Because it was determined that the infection was "MRSA" (methicillin-resistant Staphylococcus aureus), Dr. Inwha Kim (an infectious disease specialist) was consulted to manage the infection (Tr. 411-414). Dr. Kim continued to follow Ms. Fleming and prescribed various antibiotics, some administered intravenously by home health care nurses (Tr. 288-290, 621-630).

On March 2, 2006, Dr. Clutts found that the hernia had recurred, and the mesh was infected with MRSA (Tr. 310). On March 7, 2006, Dr. Clutts performed surgery to repair the hernia, remove the infected mesh, and replace it with AlloDerm. This surgery was performed at Memorial Hospital in Carbondale, Illinois (Tr. 380-393). The infection recurred following that surgery, and Fleming again was hospitalized at Memorial on April 14, 2006. Dr. Kim suggested that she be

transferred to a tertiary care center for further treatment (Tr. 356-366). Ms. Fleming was transferred to Barnes-Jewish Hospital in St. Louis, Missouri, where the wound was again debrided and a drain was inserted (Tr. 642-643). She was discharged on April 19, 2006, with instruction that she could do activities "as tolerated, follow up with Dr. Kim and Home Health for IV antibiotics and wound care." She was prescribed Oxycodone and Oxycontin for pain (Tr. 641-641A).

On June 7, 2006, Dr. Kim completed a form for the Bureau of Disability Determination in which he stated that Fleming was able to do daily activities such as sitting, walking, standing and hearing but that she may have difficulty in lifting, carrying and traveling due to her abdominal wound infection. Dr. Kim also noted that Fleming was still on Daptomycin for the MRSA infection and would need intermittent debridement of the infected abdominal wound (Tr. 671-672).

State Agency Physician Julio Pardo reviewed the records and assessed Fleming's RFC on June 29, 2006 (Tr. 323-330). Pardo indicated that Ms. Fleming could frequently lift 10 pounds, occasionally lift 20 pounds, stand and/or walk 6 out of 8 hours and sit for 6 out of 8 hours. Her ability to push and/or pull with upper extremities postural activities such as climbing and balancing were limited due to her non-healing abdominal wound. For the same reason, she had limitations in exposure to environmental factors. Dr. Pardo noted that Fleming had a history of recurrent MRSA infection and that she was receiving ongoing treatment, but he concluded that she could do light work.

Fleming developed acute renal failure, partly due to long term antibiotic use. Dr. Kim referred her to Dr. Muhammad Kamran for treatment. Dr. Kamran first saw Fleming in September 2006. By January 2007, the acute renal failure was resolved, but Fleming would continue to have

chronic kidney disease (Tr. 184-202).

Fleming had another surgical procedure at Barnes Jewish Hospital in April 2007, which consisted of exploratory laparotomy, lysis of adhesions and primary repair of a new hernia. She was discharged with instructions to avoid driving while on pain medication and to limit lifting more than 10 pounds for 6 weeks (Tr. 248-249).

Fleming submitted medical records to this Court which were *not* included in the administrative record filed by the Commissioner. These records -- at Doc. 25 on the District Court's cm/ecf docket sheet -- include an RFC evaluation form completed by Dr. Rami Abdo, results of a CT scan, and doctors' office notes from February 11, 2008 through June 16, 2008. It is unclear whether all of these records were received by the ALJ. At the hearing, Fleming's counsel stated that he had faxed the records a few days earlier. The hearing was held by videoconference. The ALJ was located in Los Angeles, California. Fleming, her attorney, and the reporter were located in Carbondale, Illinois. The ALJ indicated that the additional records had not yet been made part of the electronic file. Fleming's counsel then handed a copy of Dr. Abdo's RFC evaluation and the CT scan record to the reporter, and the ALJ stated that he would make them part of the record (Tr. 722-724). The materials before the undersigned District Judge do not disclose whether the *other* faxed records ever were received by the ALJ.

**G.     Analysis**

Fleming argues that -- because she had a serious infection which necessitated a series of surgeries -- the ALJ erred in finding her not disabled. However, Fleming does *not* argue that she is *per se* disabled because she meets or equals a listed impairment. Therefore, whether Fleming is

disabled turns on her RFC.  **See 20 C.F.R. § 404.1520(e).**

Fleming does not mount any specific attack on the ALJ's findings as to her RFC, and she points to no specific evidence in the record regarding her functional capacity.  There is scant evidence in the record to indicate that Fleming had any restrictions as a result of her hand surgery.  She filed a prior application for social security benefits in connection with her hand injury, which was denied on June 22, 2005 (Tr. 68-72).  Fleming did not appeal from that denial.  The ALJ noted in his decision herein that there was no basis on which to reopen the prior denial (Tr. 16).  Thus, any suggestion that Fleming is entitled to a period of disability beginning with her hand surgery in April 2005 must be rejected.

In the absence of any specific argument on the part of Fleming, this Court has undertaken a general review of the record and concludes that the ALJ's findings as to Fleming's RFC are supported by substantial evidence contained in the record.  The ALJ furnished a sufficient analysis of the evidence and set out a logical explanation of his conclusions about how Fleming's symptoms limit her ability to work.  This is legally sufficient.  ***Kasarsky v. Barnhart*, 335 F. 3d 539, 543 (7th Cir. 2003)**.  As noted above, the ALJ's findings were supported by the observation of Fleming's doctors -- notably, the infectious disease specialist Dr. Kim and the physician who performed her surgery at Barnes-Jewish Hospital in April 2007.  The findings also were supported by the state agency physician's RFC evaluation.  In fact, the ALJ's evaluation was more restrictive than that of the state agency physician.

In determining whether the ALJ's decision is supported by substantial evidence, this Court can only consider the evidence that was actually before the ALJ**.  42 U.S.C. § 405(g);  *Rice v.**

*Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004); *Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 817-818 (7th Cir. 1993). On this basis, Defendant maintains that the Court cannot consider Fleming's additional exhibits, filed at Doc. 25.

While the record is somewhat murky as to whether the faxed exhibits were actually received by the agency, it is clear that Fleming's counsel *did* submit a record of a CT scan and Dr. Abdo's RFC evaluation form at the hearing. The ALJ said he would admit the CT scan and the "medical source statement" (Tr. 723-724). Therefore, it is appropriate to consider those records.

These exhibits do not help Fleming's case. Dr. Abdo's findings are very close to the ALJ's findings. In fact, they are essentially the same, except that Dr. Abdo limits Fleming to lifting 5 pounds frequently, while the ALJ found that Fleming could frequently lift 10 pounds (Doc. 25, pp. 1-2). The CT scan record dated February 14, 2008 shows no evidence of recurrence of the hernia (Doc. 25, pp. 9-10). This record certainly does not undermine the ALJ's decision. Other records submitted by Fleming at Doc. 25 likewise support the ALJ's decision. For example, Dr. Clutts' office notes of February 11, March 12, and May 29, 2008 all indicate that Fleming's infection was gone and the surgical wound had healed (Doc. 25, pp. 3-5). Fleming's arguments are to no avail.

A determination of disability requires a finding that Fleming's impairments made her unable to engage in substantial gainful activity "for a *continuous* period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)(emphasis added).** An individual is <u>not</u> considered disabled if her residual functioning capacity, along with her age, education and work experience, allow her to perform a significant number of jobs in the national economy. **20 C.F.R. § 404.1520(a)(4)(v).**

ALJ Lang concluded that given Fleming's age, education, work experience and RFC, she *could* perform work that existed in significant numbers in the economy. The ALJ identified supporting evidence in the record for his findings and built a logical bridge from that evidence to his conclusion. While Ms. Fleming had an unfortunate course of medical events, substantial evidence buttresses the ALJ's decision denying her benefits.

### H.     Conclusion

After careful review of the record as a whole, this Court determines that the ALJ committed no errors of law, and the ALJ's findings are supported by substantial evidence. The final decision of the Commissioner of Social Security finding Carol A. Fleming not entitled to a period of disability, Disability Insurance Benefits or Supplemental Security Income is **AFFIRMED.**

The Clerk of Court is **SHALL ENTER JUDGMENT** in favor of Defendant Commissioner and against Plaintiff Fleming, and this case shall be closed in this Court.

IT IS SO ORDERED.

DATED February 15, 2011.

s/ Michael J. Reagan  
MICHAEL J. REAGAN  
United States District Judge